IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DARCY AGUIRRE,

                    Plaintiff,

           vs.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

**8:20CV246**

**MEMORANDUM & ORDER**

These matters are before the Court on the plaintiff's motion for an order reversing the Commissioner of the Social Security Administration's ("Commissioner") decision, Filing No. 19, and defendant's motion to remand, Filing No. 21.  The plaintiff, Darcy A., appeals a final determination of the Commissioner denying her application for Social Security benefits.  This Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3)

I.      **BACKGROUND**

       **A.  Procedural History**

       On May 15, 2017, plaintiff Darcy A. at the age of forty-four, applied for disability benefits (SSDI) under Title II of the Social Security Act; and for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act.  Filing No. 1 at 1.  Darcy A. alleges a disability onset date of January 1, 2016.  Filing No. 14-6 at 2.[1]  Her application was denied initially and upon reconsideration.  *Id.*  Darcy A. was granted a hearing before an administrative law judge ("ALJ") on April 25, 2019.  Filing No. 1 at 2.  On June 20, 2019, the ALJ denied benefits.  Filing No. 14-2 at 14.  On April 24, 2020, the Appeals Council denied

---

[1] In order to be entitled to benefits, Plaintiff must establish disability on or before the date last insured, December 31, 2016.  *Id.*; *see* 42 U.S.C. § 216(i) and 223.

1

further review, and the ALJ's decision stands as the final decision of the Commissioner. *Id.* at 7.

Darcy A. challenges the ALJ's finding, arguing that the ALJ's decision is not supported by substantial evidence, the ALJ improperly rejected plaintiff's subjective allegations of limitations, and that the ALJ did not identify and resolve the apparent conflicts between the jobs the VE identified and the requirements of those jobs per the Dictionary of Occupational Titles as required per Social Security Ruling 00-4p. Filing No. 1 at 2. Darcy A. also argues that the ALJ erred in discounting the opinions of her treating physician and did not provide sufficient reasons for doing so. *Id.*

### B. Hearing Testimony

#### 1. Darcy A.'s testimony

Darcy A. was born in 1973 and has past relevant work experience as a meat packing and processing plant worker, counting and tying hotdogs, transporting product around the plant, and cutting and bagging meat. Filing No. 14-2 at 47. She earned a GED sometime after reaching the 11th grade and is unmarried and lives in Fremont, Nebraska with her thirteen-year-old son. *Id.* at 44. Darcy A. last worked at Hormel Foods in a light-duty position counting and tying hotdogs until her employment ended in January 2012. *Id.* at 45. She took this position upon returning to work after her injury and stated that this job involved standing, bending, and lifting 30-pound boxes. *Id.* at 45-46. Darcy A. testified that she was injured on the job in September 2008 while transporting product around the plant. *Id.* at 47, *see id.* at 23.

Darcy A. states that her physical health is the primary reason she filed for disability. *Id.* at 48. Darcy A.'s primary physical impairment is her intractable lower back pain which

prevents her from standing or sitting for more than 30 minutes before it forces her to lie down for anywhere from 4 hours per day to all day, depending on her level of pain. *Id., id. at 52.*

Darcy A.'s injury has prevented her from being able to hold a position at the meat packing and processing plant. *Id.* at 46. She can no longer perform the full-time standing requirement of her light-duty assignment. *Id.* at 50. Additionally, her employer did not procure an office job for her but did send her to the locker room for increasing periods of time until she spent full eight-hour periods in the locker room. *Id.* She stated that this lasted for six months. *Id.* at 51. After six months she was told to resign from her job, and subsequently did. *Id.* at 46.

Darcy A. has a limited ability to participate in everyday activities. She walks with a limp in her right leg and does no lifting around the house and cannot bend over too far while doing housework. *Id.* at 53-54. She cannot bend over to scrub anything or vacuum, although she can load the dishwasher, depending on her pain level. *Id.* Darcy A. testified that cooking is limited to the microwave. *Id.* She does go grocery shopping or to stores, but utilizes a cane, or, if available, electric scooters. *Id.* at 49. She cannot push a grocery cart when it becomes too heavy, as it causes pain in her back, nor can she lift the groceries to put them in her car or carry them into her house. *Id.* at 52-53.

Darcy A. also stated that she takes her son to school and goes over to her friend's house, but does not like to go into other places, experience large crowds, or leave the house due to anxiety. *Id.* at 56-57. Further, she has trouble sleeping because her pain will wake her up four to five times a night and then keeps her awake for indefinite periods of time. *Id.* at 55.

### 2.  Vocational Expert's testimony

The vocational expert ("VE") was asked whether a worker of the same age, educational background, and past work experience as the Claimant could find work with the residual functional capacity to perform work at the sedentary exertional level and the following restrictions:  The worker could only occasionally climb ramps and stairs, balance, stoop or kneel, and crouch; can never climb ladders, ropes, or scaffolds, or crawl; can tolerate only occasional exposure to extreme cold and heat, concentrated humidity and respiratory irritants, such as fumes, gases, and industrial chemicals; and can understand, remember, carry out simple instructions, and perform simple routine tasks that can be learned in 30 days or less. *Id.* at 59.  The VE testified that there would be unskilled sedentary work available as an addresser, a charge account clerk, and a document preparer. *Id.* at 59-60.  The additional manipulative limitation that the worker could only occasionally reach overhead with the bilateral upper extremities would not affect their ability to perform these jobs. *Id.*  Assuming a hypothetical worker with the same vocational profile as the Claimant with the additional limitations that such an individual could only stand for 15 minutes, walk half a block, and only sit for 30 minutes at a time without having to move or lie down, and in total had to limit her standing and walking to no more than two hours, and limit her sitting to no more than four hours in an eight-hour day, the VE testified that the individual would not be able to perform the jobs identified. *Id.* at 61.  Further, the VE testified that if the hypothetical worker needed to have a rest break and lie down for 30 minutes before resuming activity, that individual would not be able to perform the jobs identified. *Id.*

### C.  Medical Evidence

Pursuant to medical records, Darcy A. underwent two back surgeries following an on-the-job injury in 2008. Filing No. 14-7 at 23 and 14.  The first took place on May 26, 2009

and included an anterior lumber discectomy with decompression and resection of the posterior longitudinal ligament and decompression of the spinal canal, polyetheretherketone interbody cage, a variable axis plate with 20 mm screws, and a small infuse bone morphogenic protein at the L5-S1 level. *Id.* at 23. And the second took place on November 20, 2009, which involved an L5-S1 fusion. *Id.* at 14.

Records reflect that she has been diagnosed with intractable lower back and lower extremity pain since her injury and surgeries, pseudoarthrosis L5-S1, lumbar radiculopathy and lumbar 5/sacral 1 degeneration (5/29/2009), pseudoarthrosis L5-S1 (failure of spinal fusion) and previous anterior lumber antibody fusion (11/20-23/2009), acute exacerbation of chronic obstructive airway disease (COPD), morbid obesity, hypertension, congenital anomalous anatomy in the lumber sacral junction, chronic insomnia, and a history of nicotine dependence. *Id.* at 17.

In March 2018, Darcy A. reported lower back pain and that she was recently in the emergency room after aggravating her back while taking the trash out. Filing No. 14-2 at 25.

Since January 2011, Darcy A. has been under the care of Thomas McKnight, M.D., her primary care physician. Filing No. 15-1 at 41. She has been prescribed various medications for pain including Tramadol (moderate to severe pain medication), hydrocodone-acetaminophen (pain medication), Topamax (anticonvulsant and nerve pain medication), Lidoderm (antiarrhythmic and anesthetic), Celebrex (nonsteroidal anti-inflammatory medication), and Norco (pain medication). *Id.*, *id.* at 55, Filing No. 14-7 at 32 and 34. On April 4, 2011, despite taking prescribed pain killers, she reported high levels of pain. Filing No. 14-7 at 32.

Alicia B. Feldman, M.D., Darcy A.'s pain specialist, prescribed hydrocodone-acetaminophen (Vicodin) to be alternated with Tramadol to avoid a high intake of Tramadol. *Id.* at 34.   Despite the numerous prescriptions, Darcy A. still suffered from high levels of pain. *Id.* at 36.   In a February 22, 2011 letter to the workers' compensation adjuster, Dr. Feldman stated that "[Darcy A.] reached maximum medical improvement on 12/07/2010."   Filing No. 15-6 at 30.   On June 23, 2011, Dr. Feldman performed a medial branch nerve block injection. Filing No. 14-7 at 36.   However, after initially limiting Darcy A.'s work to four hours of sedentary office work per day, on August 25, 2011, Dr. Feldman made the limitation a permanent work restriction due to high levels of pain.   *Id.* at 37, 42, 43.   On November 2, 2011, Dr. Feldman ordered an MRI scan, and ordered Darcy A. to stop working pending the MRI scan.   *Id.* at 45.   Following the MRI, Dr. Feldman reported there were no further treatment options and refilled the Norco prescription to manage pain, and on November 14, 2011, issued a permanent work restriction of "off work until further notice."   *Id.* at 51-53.

Darcy A. was referred to Scott Haughawout, D.O., who recommended the use of the spinal cord stimulator on September 4, 2012.   *Id.* at 55, 61.   However, the treatment was denied by the workers' compensation adjuster. When asked to claim the treatment through private health insurance Darcy A. declined the stimulator treatment   *Id.* at 61.   Dr. Haughawout recorded that "[a]t this point, Darcy has reached maximum medical improvement."   *Id.* at 61.

Darcy A. then began pharmacological pain management with Dr. McKnight, as recommended by Dr. Haughawout.   Filing No. 14-7 at 61, Filing No. 15-1 at 40.   Despite having been prescribed numerous pain medications, from through 2011-2019, she has continued to report high levels of lower back and neck pain, and, at times, shooting pain

down her lower extremities.[2]  The pain would worsen with activity and lessen with rest or inactivity.[3]  In February 2019, Darcy A. reported she was not tolerating her pain medication well and records indicate her pain was poorly controlled.  *Id.*  In his March 27, 2019 letter, Dr. McKnight noted Darcy A. still has "difficulty with day-to-day pain."  Filing No. 15-6 at 29. He describes Darcy A.'s physical limitations:

> [s]he presently can stand 15 minutes without significant pain and having to sit. She can walk approximately 1/2 block with development of increased pain. She can sit approximately 30 minutes without having to move or lie down. She has to limit her standing or walking to no more than 2 hours a day. Severity of her medical condition would require her to move and change positions. She would need rest periods to lie down. Her sitting should be no more than 4 hours in an 8 hour period. Then she would be required to rest or lie down for 30 minutes before resuming activity.

> *Id.*

Darcy A. underwent a sleep study diagnostic in 2015.  Filing No. 15-2 at 23.  The sleep study found that she suffers from severe sleep apnea, possibly causing hypoxia.  *Id.* In addition to severe sleep apnea, January 2019 records also show Darcy A. also suffers from chronic insomnia and has been observed snoring and stopping breathing.  Filing No. 14-2 at 25.  In his letter dated March 27, 2019, Dr. McKnight stated that, "[Darcy A.'s] sleep apnea causes significant daytime somnolence and sleepiness. Her long-term narcotic medicines [also] limit her ability for alertness and cause daytime somnolence."  Filing No. 15-6 at 29.

In October 2017, Darcy A. was diagnosed with acute exacerbation of chronic obstructive airway disease (COPD) and was advised to quit smoking, as it was making her

---

[2] Filing No. 15-1 at 4, 7, 11, 14, 31, 33, 34, 36-41, 57, 61, 64, 68, 71, 75, 82, 89, 96, 111, 118, 125, 128, 132, Filing No. 15-2  at 3, 7, 10, 14, 17, 21, 33, 37, 41, 45, 48, 52, 55, 59, 62, 66, 73, 77, 80, 81, 84, 87, Filing No. 15-3 at 9, 12, 16, 20, 24, 31, 53, 61, 70, 74, 78, 82, Filing No. 15-4 at 10, 14, 19, 23, 35, 43, 47, 53, 61, 65, 70, 74, 48, 83, 91, 95, 103, 112.

[3] Filing No. 15-1 at 11, 57, 61, 64, 68, 71, 75, 82, 89, 111, 118, 125, 132, Filing No.15-2 at 3, 7, 10, 14, 37, 45, 48, 52, 55, 59, 66, 81, Filing No. 15-3 at 9, 12, 16, 20, 24, 31, Filing No. 15-4 at 14, 19, 103, Filing No. 15-6 at 29.

condition worse.  Filing No. 14-2 at 25.  October 2018 treatment notes indicated that Darcy A.'s CPOD was severe, she was still smoking, and her pain averaged a seven out of ten, but the pain improved with rest, and her sleep apnea was improved with a CPAP machine. *Id.*

In addition to Darcy A.'s physical ailments, she also suffers from depressive disorder and anxiety which has left her feeling "at a standstill."  Filing No. 15-1 at 57, 64.  The first prescription of an antidepressant (Zoloft) is noted on January 28, 2011.  Filing No. 14-7 at 55.  She was also prescribed Xanax, which is used to treat anxiety and panic disorder.  *Id.* at 34.

On March 27, 2019, Dr. McKnight concluded "[Darcy A.] continues to be totally disabled and unable to work."  Filing No. 15-6 at 29.  Further, he states that, "[Darcy A.]'s medical condition will not allow her to be employed as she will miss more than one or two days a month."  *Id.*

### D.  The ALJ's Findings

In evaluating Darcy A.'s claim, the ALJ followed the sequential evaluation process. Filing No. 14-2 at 18.  The ALJ found that Darcy A. met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since January 1, 2016.  *Id.* at 19.  Further, the ALJ found that Darcy A. has the following severe impairments: obesity, spine disorder, osteoarthritis, asthma, chronic obstructive pulmonary disease (COPD), and obstructive sleep apnea; and the following non-severe impairments: a right shoulder injury, hypertension, depression, and anxiety.  *Id.* at 19-20.

Ultimately, the ALJ found that Darcy A. does not have an impairment, or combination of impairments, that meets, or medically equals, the severity of one of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 21. Specifically, Darcy A.'s impairments do not meet or medically equal the criteria of listing 1.04 (disorders of the spine), listing 3.03 (asthma), listing 3.09 (chronic pulmonary hypertension), listing 4.02 (chronic heart failure), or listing 12.02 (neurocognitive disorders). *Id.*

The ALJ determined that Darcy A. had the residual functional capacity to perform sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967(a). Filing No. 14-2 at 23. Additionally, the ALJ determined she can occasionally climb ramps or stairs, balance stoop kneel, and crouch; can never climb ladders, ropes, or scaffolds or crawl; can tolerate only occasional exposure to extreme cold and heat, concentrated humidity, and respiratory irritants, such as fumes, gases, and industrial chemicals; can understand, remember, and carry out simple instructions and perform simple and routine tasks that can be learned in thirty days or less; and, finally, can occasionally reach overhead with the bilateral upper extremities. *Id.*

The ALJ acknowledged that Darcy A.'s medically determinable impairments could have reasonably produced her symptoms, but, nonetheless, did not afford great weight to Darcy A.'s testimony, stating that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 23. Further, the ALJ concluded that Darcy A.'s obesity can be expected to exacerbate the symptoms of her back pain. *Id.* at 25.

The ALJ emphasized that Darcy A. reported her daily activities included cleaning, washing dishes, washing television, cooking, taking her son to school, napping, playing games, shopping, visiting with friends, running errands, and doing household chores. *Id.* Further stating "the claimant appeared to have no difficulty with restrictions of daily activities,

no difficulty with social functioning, no difficulty remembering simple and complex instructions, and no difficulty with concentration and attention." *Id.* Overall, the ALJ found the evidence and medical opinions support the finding that Darcy A. has a mild limitation in her ability to concentrate, persist, or maintain pace, but, this mild limitation, combined with reports that Darcy A.'s medication affects her ability to stay alert, supports limiting her to simple instructions and routine tasks. *Id.* In support of this finding, the ALJ stated the consultive examiner did not indicate any limitation in the claimant's functioning and found that Darcy A. had adequate intellectual function and was capable of managing her funds. *Id.* at 28.

Further, although the ALJ found Darcy A. *unable* to perform any past relevant work, she *is* defined as a younger individual on the alleged disability onset date, has at least a high school education, and the transferability of job skills is not material to the determination of disability. *Id.* at 29. Additionally, considering Darcy A.'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.* These jobs include Addresser (DOT # 209.587-101, unskilled SVP 2, sedentary exertional level work, with 14,000 jobs in the national economy), Charge Account clerk (DOT # 205.367-014, unskilled SVP 2, sedentary exertional level work, with 36,000 jobs in the national economy), and Document Preparer (DOT # 249.587-018, unskilled SVP 2, sedentary exertional level work, with 14,000 jobs in the national economy). *Id.* at 30.

Ultimately, the ALJ found that Darcy A. has not been under a disability, as defined in the Social Security Act, from January 1, 2016 though the date the ALJ decision and can perform sedentary jobs that exist in the national economy. *Id.*

### 1.  Dr. Severson's opinion

The ALJ reviewed Darcy A.'s September 2017 physical consultative examination with Meryl Severson II, M.D.  *Id.*  Dr. Severson noted that Darcy A. was able to sit in a chair while giving her medical history, though repositioned frequently; that she rose from the sitting position without difficulty; and that she was able to get on and off the examination table without difficulty but did have a right limp while ambulating.  *Id.*  Dr. Severson further noted that Darcy A.'s spine was strait, there was no tenderness, had good pulses, was able to manipulate her fingers and thumbs, had steady balance, was able to tandem walk normally, and had full motor strength.  *Id.*  The ALJ notes that Dr. Severson reported Darcy A. had decreased sensation of touch in her left lower heel and toe, walking caused lower back pain, and her obesity contributed to her functional inabilities.  *Id.*

The ALJ found that Dr. Severson's opinion regarding overall exertional ability was persuasive but found certain restrictions seemed contradictory or unexplained in the report, leading the ALJ to conclude that Dr. Severson's opinion was only somewhat persuasive overall.  *Id.* at 26-27.  Primarily, the ALJ found the restriction that Darcy A. cannot stand for more than two minutes at a time was unsupported by Dr. Severson's objective exam, in conjunction with the documented activities that Darcy A. engaged in such as scooping the driveway and taking out the trash.  *Id.* at 27.  The ALJ cites evidence from the objective exam that Darcy A. could rise from a seated position without difficulty and that she could climb a flight of stairs, taking breaks as necessary.  *Id.* at 26.  The ALJ found that Dr. Severson's opinion is generally consistent with a finding that the claimant *is* capable of sedentary work.  *Id.* at 27.

11

### 2.  Dr. McKnight's opinion

Dr. McKnight's opinion found that Darcy A. could stand for fifteen minutes, walk approximately half a block, sit for thirty minutes, could not stand or walk for more than two hours per day, could sit for four hours in an eight-hour day, that his client was totally disabled, that she would be unable to work, and that she would miss more than two days a month at a job. *Id.* at 27.  The ALJ contends the evidence is inconsistent with the evidence of the record, despite a treating relationship, because of the activities that Darcy A. has engaged in such as taking out the trash, scooping her driveway, sitting in a chair for an extended period of time, rising from an examination table without difficulty, that pulmonary function studies that have revealed mild restrictions, that Darcy A. has claimed her sleep apnea is better with a CPAP machine, and finally that Darcy A. has continued to smoke though having been warned of the effects of smoking. *Id.*  Therefore, The ALJ found Dr. McKnight's opinion only partially persuasive because his opinion not entirely consistent with the evidence of the record. *Id.*

### 3.  Dr. Feldman's opinion

Dr. Feldman claimed Darcy A. was permanently disabled, had reached maximum medical improvement, had a 23% total body impairment rating, and could occasionally lift five to ten pounds. *Id.* at 26-27.  The ALJ noted that Dr. Feldman's opinion was contradicted by Darcy A.'s earlier return to work (at the meat processing plant) but ultimately determined that these findings were generally consistent with a finding that Darcy A. *could* do sedentary work. *Id.* at 28.  The ALJ therefore made the determination that Dr. Feldman's opinion was of little prohibitive value and was limited in its persuasiveness because the opinion was so remote when examining Darcy A.'s current condition. *Id.*  The ALJ also found the work

restrictions listed in the evidence unpersuasive because they were not meant to be long-term assessments of Darcy A.'s functioning.  *Id.*

### 4. State agency medical consultants' opinions

Of all of the medical opinions reviewed, the only opinions the ALJ found persuasive, were the state agency medical consultants' opinions, in which the doctors opined that Darcy A. was capable of sedentary work, could stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour work day—further, that Darcy A. could occasionally crouch, kneel, stoop, balance, and climb ramps or stairs, but could never crawl or climb ladders, ropes, and scaffold—also, that Darcy A. should avoid concentrated exposure to extreme cold, extreme heat, humidity, or pulmonary irritants.  *Id.* at 26. Subsequently, the ALJ chose to give no deference or any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from Darcy A.'s medical source.  *Id.*  The ALJ found the state consultants' opinions persuasive – despite the opinions indicating that Darcy A. had injured her back and tried numerous treatments, including two spine surgeries – because Darcy A. engaged in activities or actions that were inconsistent with "her alleged pain."  *Id.*  Further, the ALJ gave weight to the following:  physical therapy evaluation indicating Darcy A.'s good rehabilitation potential and her clinical presentation was stable and/or uncomplicated; studies that showed Darcy A. has mild restriction on pulmonary function; reports Darcy A. has made claiming her sleep apnea was better with the use of CPAP; and to the fact that Darcy A. continues to smoke, despite being warned of the negative effects that this would have on her breathing and pain. *Id.*

The ALJ went on to review the mental impairments of Darcy A.  The ALJ notes that Darcy A. was diagnosed with depression and anxiety, and that she also reported several

mental health symptoms. *Id.* State consultants found that Darcy A.'s mental impairments were not severe. *Id.* The ALJ found these opinions persuasive because Darcy A.'s depression had been diagnosed as mild and stable, she reported she could handle her own money, and records indicate that she had normal memory or cognitive functioning. *Id.* During a September 2017 psychological consultative examination, the examiner noted that Darcy A. appeared to have no difficulty with restrictions of daily activities, no difficulty with social function, no difficulty remembering simple and complex instructions, and no difficulty with concentration and attention. *Id.* The ALJ found the evidence and opinions supported the finding that Darcy A. has mild limitations in her ability to concentrate, persist, or maintain pace, and that this mild limitation, combined with reports that Darcy A.'s medication affects her ability to stay alert, supports limiting her to simple instructions and routine tasks. *Id.* Additionally, the examiner did not indicate any limitation in the claimant's functioning on a checklist assessing functional abilities and found that Darcy A. had adequate intellectual function and was capable of managing her funds. *Id.* The ALJ therefore found this opinion persuasive, as it was supported by the evidence of the record and by the findings of the State agency consultants. *Id.* at 29

## II.   DISCUSSION

### A. Law

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th

Cir. 2000). Substantial evidence "is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

However, this "review is more than a search of the record for evidence supporting the [ALJ or Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). In determining whether there is substantial evidence to support the Commissioner's decision, this court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity ("RFC") and his or her age, education and work experience. *Id.* At step one, the claimant has the burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). At step two, the claimant has the burden to prove he or she has a medically determinable physical or mental impairment or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities. *Id.* At step three, if the claimant shows that his or her impairment meets or equals a presumptively disabling impairment listed in the regulations, he or she is automatically found disabled and is entitled to benefits. *Id.* If not, the ALJ determines the claimant's RFC, which the ALJ uses at steps

four and five. 20 C.F.R. § 404.1520(a)(4). At step four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*; *see Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). An ALJ's RFC determination (1) must give appropriate consideration to all of a claimant's impairments; and (2) must be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016.).

In order to be supported by substantial evidence, an ALJ's RFC finding must be supported by a treating or examining source opinion. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). A claimant's RFC is a medical question and "'an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008). "The ALJ 'may not simply draw his own inferences about plaintiff's functional

16

ability from medical reports.'" *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

Under the regulations governing claims filed before March 27, 2017, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.[4]  *See* 20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  20 C.F.R. § 404.1527(c)(2)-(6).  Even if not entitled to controlling weight, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight.  *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).  "When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so."  *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the Commissioner engages in a two-step process: (1) first, the ALJ considers whether there are underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work.  Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (Policy

---

[4] The regulations have since been amended and reorganized—20 C.F.R. §§ 404.1527 and 416.927 have been superseded by 20 C.F.R. §§ 404.1520c and 416.920c for claims filed after March 27, 2017.  *See Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 1513683, at *39 (D.S.D. Mar. 27, 2018).  However, 20 C.F.R. §§ 404.1527 and 416.927 still apply to this case, which was filed before the effective date of the new regulations.  *Id.*

Interpretation Titles II & XVI: Evaluation of Symptoms in Disability Claims).  In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*, 81 Fed. Reg. at *14168.  To determine the intensity, persistence, and intensity of an individual's symptoms, the ALJ evaluates objective medical evidence, but will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.  *Id.*  However, the ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *14169.

If an ALJ cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then she must carefully consider other evidence in the record—including statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in the Social Security regulations—in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. *Id.*  Those factors include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms;

4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *14169-70.

Social Security Ruling 16-3p also provides:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult or the ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim. Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

*Id.* at *14170.  "[The Eighth Circuit Court of Appeals] has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)).  Allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications. *Id.*  Similarly, a failure to follow a recommended course of treatment also weighs against a claimant's credibility. *Id.*

In the fourth step of the sequential analysis, the ALJ considers whether a claimant's impairments keep her from doing past relevant work. 20 C.F.R. §404.1520(e).  A claimant's RFC is the most that one can do despite his/her limitations. 20 C.F.R. § 404.1545.  The

claimant is not disabled if the claimant retains the RFC to perform: "1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). During this step, an ALJ may consider the VE's testimony when determining the claimant's RFC. *Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007). The ALJ often asks the VE a hypothetical question to help determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

A hypothetical question posed to a VE as part of the RFC determination must be properly phrased to include all relevant impairments that are substantially supported by the record as a whole. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). If the hypothetical question does not include all relevant impairments the VE's testimony cannot constitute substantial evidence to support the ALJ's determination. *Id.*

This court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). An ALJ is not required to discuss all the evidence in the record to show that it was properly considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "Simply because a matter is not referenced in the opinion does not mean the ALJ failed to rely on the evidence in making his determination. However, this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004). An ALJ "must minimally articulate his reasons for

crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)).

The ALJ must give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh*, 786 F.3d at 1132. Even if not entitled to controlling weight, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Id.* The regulatory framework requires the ALJ to evaluate a treating source's opinion in consideration of factors such as length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating source. *Id.*; *see* 20 C.F.R. 404.1527(c)(2). "When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Jenkins v. Apfel*, 196 F.3d 922, 924-925 (8th Cir. 1999) (stating the ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions).

When assessing the credibility of a claimant's subjective allegations, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999) (applying analysis mandated by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), to seizure complaints). "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)). A claimant may have

21

disabling pain and still be able to perform some daily home activities.  *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); *see also Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005).

### B. Analysis

The ALJ's fifth step determination on Darcy A.'s Social Security claims was flawed in three respects.  First, the ALJ improperly assessed the weight of the treating physician.  Second, the ALJ improperly dismissed the credibility of Darcy A.'s subjective complaints.  Finally, the ALJ failed to resolve a conflict between the VE and the Dictionary of Occupational Titles.

1. The ALJ improperly assessed the weight of the treating physician

The ALJ did not properly assess the weight of the treating physician, and instead asserted the ALJ's own medically unsupported findings.  The ALJ refers to several activities and actions by Darcy A. that are described as inconsistencies and are used for the purpose of finding Dr. McKnight's opinion not persuasive and Dr. Severson's opinion only somewhat persuasive.  Filing No. 14-2 at 26-27.

The findings the ALJ claim are inconsistent with the medical evidence and testimony are as follows: Darcy A. scooping her driveway, taking the trash out, sitting in a chair while reciting her medical history, rising from a sitting position without difficulty, getting on and off of the examination table without difficulty, having no tenderness, having good pulses, having an ability to manipulate her fingers and thumbs, having steady self-balance, able to tandem walk normally, and showing full motor strength.  *Id.*  Further, the ALJ references a physical therapy evaluation that indicated the claimant's rehabilitation potential was good and her clinical presentation was stable and/or uncomplicated.  *Id.*  While the selected evidence

relied upon by the ALJ seemly creates like a generally cheery outlook for Darcy A., most of these "inconsistencies" are not actual inconsistencies in the record.

In regard to Darcy A. scooping her driveway and taking out the trash, these activities were part of a singular event in February 2018.  This event was singular because it led to an emergency room visit as shown in the Emergency Physician Note dated February 22, 2018:

> Chief Complaint…Was moving the trash can outside and slipped on the ice. Right shoulder Pain – The patient presents with right, shoulder pain, Chief complain is right shoulder pain.  Patient states that she injured her right shoulder around 9:00 this morning while scooping her driveway.  She states that she slipped on ice and fell forward.

Filing No. 15-5 at 26-30.  If anything, instead of showing that Darcy A. is able to engage in daily activities to a point where she should not be considered disabled as the ALJ alleges, this evidence proves that even simple household chores are out of reach, and even potentially dangerous, for Darcy A.

The ALJ's reliance on Dr. Severson's report noting Darcy A.'s ability to sit in a chair for an extended period of time is misleading and incorrectly quoted.  Although the first part of the sentence in question does begin, "The claimant sat in a chair for approximately 29 minutes during the history," it finishes with, "she was repositioning frequently for comfort." Filing No. 15-3 at 53.  Darcy A.'s inability to sit *still* for long periods of time is not inconsistent with Dr. McKnight's opinion.  Filing No. 15-6 at 29.  As for rising from a sitting position without difficulty and getting on and off an examination table without difficulty, Dr. Severson also notes that Darcy A. could not stand for longer than two minutes at a time.  Filing No. 15-3 at 53.  Although Dr. Severson notes that Darcy A. had no neck, chest, abdomen, or costovertebral angle tenderness, had good pulses, was able to manipulate her fingers and thumbs, had steady self-balance, was able to tandem walk normally, and she had full motor

strength, these positive attributes have no bearing on the alleged primary disability of chronic back pain. Filing No. 15-2 at 52.

Regarding the daily activities that the ALJ considered inconsistencies, the Eighth Circuit has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). The daily activities cited by the ALJ in an attempt to show that Darcy A. was not disabled, included doing some dishes, making microwave meals, occasionally going to the store where the use of a cart was painful, and the assistance of an electric scooter was necessary, are the most basic necessities of modern life and should not be used against an individual, without good cause, during a Social Security disability determination.

The physical therapy evaluation referenced by the ALJ is only an initial examination, and there are no further related physical therapy records that indicate Darcy A. was able to be, or was, rehabilitated. This initial examination reports that Darcy A.'s chief complaint and primary concern is "pain in the back with standing and walking, inability to lay flat, limited distances with ambulation and overall deconditioning." Filing No. 15-5 at 21. The evaluation goes on to list that Darcy A.'s aggravating factors are standing, walking, and going up and down stairs, and that the pain location was her central low back. *Id.* The content found in this initial physical therapy examination are broadly consistent with Darcy A.'s subjective complaints and with her treating physicians' opinions.

Further, under the regulations governing claims filed before March 27, 2017, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

24

record, it should be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Even if not entitled to controlling weight, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). As this claim was filed before the date of March 27, 2017, and the ALJ has not provided good reason for discounting the treating source's opinion, Dr. McKnight's opinion will be given controlling weight.

The ALJ's finding that Dr. Feldman's opinion is too remote to be of use in the disability determination is additionally incorrect. Dr. Feldman's findings provide a clear beginning to Darcy A.'s limitations, how the limitations initially arose and progressed from her back injury in 2008, and the resulting two surgeries 2009. Further, Dr. Feldman's opinions are not contradicted by Darcy A.'s previous return to work, because her return to work was not back to her original position, and she only was able to work for a short period before she was asked to resign entirely.

For the purposes of this order, these medical opinions are found to be broadly consistent with the objective medical evidence of the record.

2. The ALJ improperly dismissed the credibility of Darcy A.'s subjective complaints

The ALJ improperly discounted that Darcy A. was not credibly reporting her limitations and subjective complaints.

The ALJ came to the determination that in Darcy A.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for

the reasons explained in this decision." Filing No. 14-2 at 23. The ALJ goes on, noting several points when Darcy A. would experience high levels of pain after her two back surgeries in 2009. Id. at 23-25. The actions and reports the ALJ point to as inconsistent in the record are the same used to improperly address the weight of her treating physicians. Concerns regarding these so-called inconsistencies have been addressed above.

The Court finds that the ALJ erred in dismissing Darcy A.'s subjective complaints.

3. Failure to Resolve a Conflict between the Vocational Expert and the Dictionary of Occupational titles

In the case at bar, the ALJ did not elicit an explanation from the VE for the conflict between the VE's testimony and the Dictionary of Occupational Titles. The ALJ determined that Darcy A. has the limitation of being able to understand, remember, and carry out simple instructions, perform simple and routine tasks that can be learned in thirty days or less. Id. at 22, 28. However, the Dictionary of Occupational Titles for Reasoning Level 2 or higher jobs requires the ability to carry out detailed but uninvolved written or oral instructions. Dictionary of Occupational Titles, App. C, 1991 WL 688702.

In Hutson, the same reasoning level error was made and identified as reversible error—that the ALJ limited the claimant to jobs that required them to understand, remember, and carry out simple instructions, but the occupations which the VE testified were suitable for the claimant required them to have the capacity to carry out detailed but uninvolved written or oral instructions. Hutson v. Saul, 2020 WL 4220084 at *6-7 (D. Neb. July, 23 2020); see also Hutson v. Saul, 2020 WL 5653518 at *3 (D. Neb. Sept. 23, 2020). In Lucy, the ALJ's decision was not supported by substantial evidence when the claimant had the capacity to follow simple directions, but the range of occupations the ALJ considered suitable included occupations coded at Reasoning Level 2. Lucy v. Charter, 113 F.3d 905, 909 (8th Cir. 2006). In Stanton, a conflict was found when the ALJ determined that the claimant was

limited to the ability to understand, retain, and carry out simple one-or-two-step instructions, but then concluded that the plaintiff could perform reasoning level two occupations. *Stanton v. Comm'r, Soc. Sec. Admin*, 899 F.3d 555, 558-59 (8th Cir. 2018). In *Thomas* the ALJ errored in determining that the claimant was limited to unskilled sedentary work and tasks with the complexity of rote one or two steps that involved little or no judgement, but then relied on the VE's opinion that the plaintiff had the capacity for a reasoning level 3 occupation. *Thomas v. Berryhill,* 881 F.3d 672, 676-77 (8th Cir. 2018).

The same reasoning level error exists in the case at bar. This Court finds that the failure of the ALJ to resolve conflict between the testimony of the VE and the definition taken from the Dictionary of Occupational Titles is reversible error.

The Court finds there is not substantial evidence in the record to support the ALJ's findings and the ALJ's decision should be reversed.

## III.   CONCLUSION

The clear weight of the evidence supports a conclusion that Darcy A. has been disabled since her claimed onset date of January 1, 2016. Reversal and remand for an immediate award of benefits is only appropriate where the record overwhelmingly supports a finding of disability, and the court finds that "the clear weight of the evidence fully supports a determination [Darcy A.] is disabled within the meaning of the Social Security Act." *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). More importantly, the Eighth Circuit has repeatedly approved of immediately awarding benefits based upon the controlling weight of a claimant's treating medical provider. *See, id.; Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000).; *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *cf. Papesh v. Colvin*, 786 F.3d 1126, 1135-36 (8th

Cir. 2015).  And where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate.  *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001).

Accordingly,

IT IS ORDERED THAT:

1.  Plaintiff's motion for an order reversing the commissioner's decision, Filing No. 19, is granted;

2.  Defendant's motion for remand, Filing No. 21, is denied.

3.  This case is remanded to the Commissioner for computation and an award of benefits.

4.  A separate judgment will be entered in accordance with this memorandum and order.


Dated this 11th day of August, 2021.


BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge